E-FILED
Friday, 11 October, 2013 03:32:52 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13-cr-30038 |
| | ) | |
| NATHANIEL GARECHT, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This matter comes before the Court for a Report and Recommendation on Defendant Nathaniel Garecht's Pretrial Motions (d/e 11) (Motion). Defendant Garecht is charged with: Distribution of Cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count 1); Possession of Cocaine with Intent to Distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count 2); and Possession of a Firearm in Furtherance of a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Indictment (d/e 6).

On May 6, 2013, Garecht was arrested pursuant to a state-issued arrest warrant. He had cocaine and a firearm on his person at the time of the arrest. On the same day, Garecht's residence was searched pursuant to a state-issued search warrant. His wife made inculpatory statements at

the time of the search and consented to the search of a rental storage unit. Cocaine and other evidence were found at the residence and in the storage unit. Garecht also made inculpatory statements. Garecht concedes that agents provided him with Miranda warnings before he made any statements. Memorandum in Support of Defendant's Pretrial Motions (d/e 10) (Garecht Memorandum), at 2-4.

The warrants were based primarily on information secured through a confidential informant (CI). The CI obtained cocaine from Garecht during a series of transactions over several days. The CI wore a recording device during these transactions. Law enforcement officials did not secure a court order authorizing the recordings. The recordings were inadmissible in state court because Illinois law requires judicial supervision of recordings unless all parties being recorded consent to the recording. 725 ILCS 5/108A. Federal law allows recordings without judicial supervision if one of the parties being recorded consents. 18 U.S.C. § 2511(2)(c).

Garecht moves to suppress the evidence on the grounds that: (1) the search warrant was improperly issued and not based on probable cause; (2) the statements he made were involuntary; (3) the arrest was not based on probable cause; (4) the recordings violate state law; and (5) the

statements and other evidence are inadmissible as the fruit of a poisonous tree. Motion, at 1-2.

The Court conducted a limited evidentiary hearing on October 4, 2013. Garecht appeared personally at the hearing and by his attorney Michael Costello. The Government appeared by Assistant United States Attorney Timothy Bass. The Court heard testimony regarding the voluntariness of the Defendant's statements to law enforcement officials after his arrest. The Court also heard testimony regarding the federal law enforcement officials' involvement in the investigation, and in particular, in the recording of transactions between the Defendant and the CI. Garecht's counsel conceded at the hearing that the CI consented to the recordings.

After careful consideration of all the evidence, the submissions and arguments of the parties, and the applicable law, the Court recommends that the Motion should be DENIED.

## STATEMENT OF FACTS[1]

On May 6, 2013, Sangamon County, Illinois, Sheriff's Department (Department) Deputy Kenneth Karhliker presented a Complaint for Search Warrant and supporting Affidavit to a Sangamon County, Illinois, Circuit Judge. Government's Response to Defendant's Motion to Suppress

[1] This Report and Recommendation has been prepared without the benefit of a transcript of the hearing.

(d/e 13), attached Warrants, Complaint for Search Warrant and Affidavit. Karhliker executed the Affidavit under oath in front of the Circuit Judge. The Affidavit stated that on April 26, 2013, members of the Department's Narcotics Unit and officers of the Drug Enforcement Agency (DEA) met with the CI. The Affidavit stated that the CI had pending criminal charges and he was cooperating for consideration on those charges. The CI stated that he had known Garecht for a couple of years. The CI stated that Garecht combined his money with an individual named Eddine Curry to purchase cocaine in Chicago. The Affidavit stated that the CI identified Curry and Garecht from photographs.

The Affidavit stated that the CI agreed to wear a recording device when he met with Garecht. He wore this device several times. On April 30, 2013, the CI wore the recorder when he met with Garecht in a parking lot in Springfield, Illinois. Garecht told the CI that Curry was in Chicago purchasing the cocaine, and Garecht would have cocaine when Curry returned.

On May 2, 2013, the CI wore a recording device when he met with Garecht at Garecht's residence at 417 W. Reynolds, Springfield, Illinois (the Residence). The Affidavit stated that at that meeting, the CI received 29.2 grams of cocaine from Garecht. Garecht "fronted" the cocaine to the

CI. The Affidavit stated that the CI was obligated to pay Garecht for the cocaine at a later time. The CI observed Garecht loading cocaine into plastic bags. The CI stated that Garecht had ten ounces of cocaine on his bedroom floor.

The Affidavit stated that the CI met with Garecht again on May 3, 2013, at the Residence. The CI again wore a recording device. The CI paid Garecht $1,450.00 for the cocaine he received the day before. Garecht told the CI that he did not have any cocaine at his home, but would be getting some in an hour.

The Affidavit stated that on May 5, 2013, the CI again met Garecht at the Residence and again was wearing a recording device. The CI secured 29 grams of cocaine from Garecht. Garecht again fronted the cocaine to the CI.

The Affidavit stated that before each encounter, officers searched the CI and his vehicle, placed the recorder on him, watched the CI go from the designated location to the Residence, watched as he returned to the specified location, searched the CI and his vehicle, debriefed the CI, and reviewed the recordings to confirm the statements of the CI.

Based on the Affidavit, the Circuit Judge issued a search warrant for the Residence and an arrest warrant for Garecht.

On May 6, 2013, law enforcement officials executed the warrants. Officers arrested Garecht in the parking lot of a hotel in Springfield, Illinois. Karhliker testified at the hearing that Garecht pulled a firearm out of his pants pocket and threw it away as officers approached. Officers placed him under arrest and found cocaine on his person. Officers retrieved the weapon. Garecht was handcuffed and placed in Karhliker's vehicle. Karhliker testified that he gave Garecht his Miranda warnings orally at the time of his arrest.

Karhliker then drove Garecht to the Residence. Other officers arrived in other vehicles. The officers executed the search warrant at that time. During the search, Karhliker and DEA Drug Task Force officer Thomas Maybury sat with Garecht at Garecht's kitchen table and questioned him. Karhliker removed the handcuffs and allowed Garecht to smoke during the questioning. Karhliker and Maybury testified that Garecht was first given a written Miranda warning sheet. Garecht reviewed and signed the sheet, as well as Karhliker and Maybury. Karhliker and Maybury testified that Garecht told the officers that he wanted to cooperate. The interview lasted about an hour. According to Karhliker, Garecht described his drug activity in detail. Karhliker and Maybury both testified that the officers made no

threats and did not use any form of force or coercion. Karhliker testified that no weapons were drawn after the initial arrest.

DEA Special Agent Richard Dulles testified at the hearing that Garecht's wife contacted the DEA on May 8, 2013. She said that Garecht wanted to provide more cooperation and that he had more information. On May 9, 2013, Dulles and DEA Drug Task Force Officer Amy Strong met with Garecht.[2] Garecht was in custody, but was in Memorial Hospital in Springfield, Illinois, due to chest pain. Dulles testified that Garecht was released from the hospital on May 9. Two Sangamon County Jail Correctional Officers were also present. Dulles provided Garecht with another Miranda warning form, which Garecht signed. Dulles testified that he interviewed Garecht for about an hour. Garecht affirmed that he wanted to cooperate and provided additional information. Dulles testified that he made no threats of any kind during the interview. Dulles testified that the interview ended because Garecht was discharged from the hospital.

Dulles testified that Garecht's wife also offered to cooperate. She met with officers at least two times and made a recorded call. Dulles testified that Garecht's wife never mentioned any threats.

---

[2] Officer Strong's name is spelled phonetically based on the testimony at the hearing.

On July 15, 2013, DEA Task Force Officer Maybury met with Garecht. Garecht had signed a proffer agreement with the government. Maybury called Garecht's counsel to arrange for an interview. Garecht's counsel told Maybury to go ahead and interview Garecht. Maybury testified that he interviewed Garecht for about an hour. Garecht was cooperative and made no complaints about his treatment.

Dulles testified that Garecht continued to cooperate with law enforcement officials until he filed this Motion. After the Motion was filed, cooperation stopped. It was unclear from the testimony whether the Government or Garecht stopped the cooperation.

At the October 4, 2013, evidentiary hearing, Garecht's counsel questioned the officers about the federal officers' involvement in the investigation. Karhliker testified that after he interviewed the CI initially, he discovered that the CI had worked before with DEA Task Force Officer Maybury. Maybury was a police officer employed by Jerome, Illinois, assigned to the DEA Drug Task Force. As such, Maybury was deputized as a sworn federal officer. Karhliker contacted Maybury to bring the DEA into the investigation. Karhliker testified that he brought the DEA into the investigation because of the quantity of drugs involved. He testified that he needed the DEA to provide the money for the controlled buys. The

amounts involved were beyond the ability of the Sangamon County Sheriff's Office.

Maybury testified that he opened a DEA investigation after being contacted by Karhliker. Maybury testified that he opened the DEA investigation because of Garecht's criminal history and because of the quantity of drugs involved. Maybury and Dulles both testified that they participated in the investigation. Maybury and Dulles were present when the CI performed the recorded, controlled contacts with Garecht. The officers used DEA recording equipment. Dulles put the equipment on the CI on at least two occasions and monitored the recording equipment during those two transactions. Maybury and DEA Drug Task Force Officer Amy Strong were present at the execution of the search warrant. Strong assisted in the search. Maybury assisted in questioning Garecht.

## ANALYSIS

Garecht raised several issues in his Motion. His counsel argued at the hearing that the key issue was whether the recordings of the transactions between Garecht and the CI were admissible. The Court will address this issue first and then address the remaining issues in the order they were presented in the Motion.

Admissibility of the Recordings

The admissibility of the recordings is governed by federal law. Thus, the recordings are admissible if the persons conducting the recordings complied with federal law, regardless of whether the procedures used complied with state law. United States v. Escobedo, 430 F.2d 603, 607 (7th Cir. 1970). In this case, the law enforcement officials complied with federal law because one party to the recorded conversations, the CI, consented to the recording. 18 U.S.C. § 2511(2)(c). Therefore, the recordings are admissible.

Garecht argues that the recordings are inadmissible because the federal law enforcement officials were only brought into the investigation to give cover to the state officials to allow the state officials to violate Illinois law. Illinois law requires consent of all parties to a recording or judicial supervision of recordings. 725 ILCS 5/108A. Garecht argues that Illinois officials violated state law by conducting the recordings without his consent and without judicial supervision. He argues that the federal officers did not really participate in the investigation. Karhliker brought them in to provide cover for his illegal activities. Therefore, the illegally secured recordings are inadmissible.

Garecht's argument, though novel, is factually and legally incorrect. The evidence presented at the hearing establishes that the federal officers actively participated in the investigation. Karhliker needed the DEA because of the quantities of drugs involved. The Sangamon County Sheriff's Office was not in a position to provide the funds necessary to conduct such large controlled buys. The DEA provided the recording equipment and supervised its use. DEA Drug Task Force Officer Maybury had experience with the CI. Maybury also participated in the interviews of Garecht. DEA Task Force Officer Strong participated in the search of the Residence and in the May 9, 2013, interview of Garecht. DEA Special Agent Dulles also participated in the investigation and in the May 9 interview. It is clear from the evidence that the federal officials actively participated in the investigation. The federal officers were not just on the scene to provide "cover" for the state law enforcement officials.

Garecht's novel argument is also legally incorrect. Federal law controls the admissibility of evidence in federal court. United States v. Escobedo, 430 F.2d at 607. There is no requirement that federal officials conduct the recording. As long as the recordings were conducted with the

consent of the CI, then there is compliance with federal law and the tapes are admissible. The level of participation of federal officers is irrelevant.[3]

Garecht argues that the Supreme Court decision in Elkins v. United States supports his position. Elkins, 364 U.S. 206 (1960). The Elkins decision holds that evidence secured by state officials in violation of the defendant's Fourth Amendment right to be free from unreasonable searches and seizures is not admissible in federal court. Elkins, 364 U.S. at 223-24.[4] The recordings conducted in this case did not violate Garecht's Fourth Amendment rights. He had no reasonable expectation of privacy in the statements he made to the CI because the CI could communicate those statements to anyone. United States v. White, 401 U.S. 745, 752-54 (1971). Therefore, the Elkins decision does not apply. The recordings in this case were conducted in accordance with federal law. They are admissible. Garecht's motion to suppress the recordings should be denied.

Sufficiency of the Search Warrant

Garecht next argues that the state search warrant was invalid because the information provided to support the warrant application was

---

[3] Garecht also cites Illinois cases for the proposition that recordings may be admissible in Illinois courts even if Illinois law was violated if federal officials participated in the investigation, the officers complied with federal law, and there was no collusion to evade Illinois statutes. See Garecht Memorandum, at 11 (citing People v. Burnom, 338 Ill.App.3d 495, 790 N.E.2d 14 (Ill. App. 1st Dist. 2003). These cases discussing Illinois law and procedure are irrelevant. Federal law controls. Escobedo, 430 F.2d at 607.

[4] At the time that the Supreme Court decided Elkins, the exclusionary rule did not apply to state law enforcement officials. That rule changed one year later in Mapp v. Ohio, 367 U.S. 495 (1961).

insufficient to establish probable cause and because the information was derived from the illegal recordings. Garecht's arguments are unpersuasive.

The Affidavit established probable cause in this case. The test for probable cause is objective. Cervantes v. Jones, 188 F.3d 805, 911 (7th Cir. 1999). The evidence presented to the magistrate must present "facts sufficient to induce a reasonable prudent person to believe that a search thereof will uncover evidence of a crime." United States v. McNeese, 901 F.2d 585, 592 (7th Cir. 1990); see Illinois v. Gates, 462 U.S. 213, 238 (1983) ("Probable cause to search exists if, given the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place.").

The Affidavit in this case clearly set forth facts to establish probable cause to search the Residence. The CI had twice secured cocaine from Garecht at the Residence while under surveillance by law enforcement officials. The CI had observed cocaine in Garecht's bedroom. The officers' observations during the surveillance and the recordings corroborated the CI's description of the events. The facts presented would induce a reasonable prudent person to conclude that cocaine or other evidence of drug trafficking would be found at the Residence.

Garecht argues that the recordings secured by the CI should not have been considered. As explained above, the recordings are admissible in federal court. Therefore, the representations in the Affidavit that are corroborated by the recordings may be considered in evaluating the sufficiency of the Affidavit. The search warrant was valid. Garecht's motion to invalidate the search warrant should be denied.

Involuntary Statements

Garecht moves to suppress his statements to law enforcement officials on the grounds that they were involuntary. This request also should be denied.

Voluntariness is a factual issue. Even when Miranda warnings are given, due process requires that a confession must be voluntary. United States v. Vallar, 635 F.3d 271, 282 (7th Cir. 2011). Voluntariness is determined under the totality of the circumstances. Coercive government activity is necessary to render a statement involuntary. The Vallar Court explained,

> We have held that "[a] confession is voluntary if, in the totality of circumstances, it is the product of a rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will." *United States v. Gillaum,* 372 F.3d 848, 856 (7th Cir. 2004); *see also Schneckloth v. Bustamonte,* 412 U.S. 218, 226 (1973). "[C]oercive police activity is a necessary predicate to the finding that a confession

> is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Gillaum,* 372 F.3d at 856; *see also United States v. Montgomery,* 555 F.3d 623, 632 (7th Cir. 2009). "[W]e analyze coercion from the perspective of a reasonable person in the position of the suspect." *United States v. Huerta*, 239 F.3d 865, 871 (7th Cir. 2001).

United States v. Vallar, 635 F.3d at 282.

The Court sees no evidence of any coercive conduct by the officers. During the interview at the time of his arrest, Garecht sat at his own kitchen table without any handcuffs or other restraints. He was also allowed to smoke during this interview. A few weeks later, his wife called the officers and told them that Garecht wanted to talk to them again. The officers complied with Garecht's request and spoke to him a second time. Garecht later signed a cooperation agreement and his attorney gave officers permission to speak with him. No officers used any threats or coercion. Rather, Garecht wanted to cooperate. Each interview lasted approximately an hour. There is no evidence that any of his statements were involuntary. Garecht's motion to suppress his statements as involuntary should be denied.

No Probable Cause to Arrest

Garecht argues that the officers had no probable cause to arrest him. The Court again disagrees. The officers had a state arrest warrant. As with the state search warrant, the sufficiency of the state arrest warrant

turns on whether the magistrate (or the state court judge) was provided with sufficient information to establish probable cause. See Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 564 (1971). The controlled buys set forth in the Affidavit provided sufficient information to establish probable cause that Garecht was guilty of distribution of cocaine. Therefore, the state arrest warrant was valid, and the arrest pursuant to the warrant was valid. This portion of Garecht's motion should be denied.

Fruit of the Poisonous Tree

Garecht last moves to suppress evidence found as a result of the arrest, search, and his statements as the fruit of the poisonous tree. See Wong Sun v. United States, 371 U.S. 471 (1963). The fruit of the poisonous tree doctrine does not apply because the investigation, arrest, search, and interviews were all validly conducted. Therefore, no evidence resulted from a violation of Garecht's rights. This portion of Garecht's Motion should be denied.

WHEREFORE, this Court recommends that Defendant Nathaniel Garecht's Pretrial Motions (d/e 11) should be DENIED.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after being served with ECF copy of this Report and

Recommendation. See 28 U.S.C. § 636(b)(1). Failure to file a timely objection will constitute a waiver of objections on appeal. See Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986); 28 U.S.C. § 636(b)(1).

ENTER: October 11, 2013

*s/ Byron G. Cudmore*
UNITED STATES MAGISTRATE JUDGE